IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01794–EWN

SAMANTHA L. LITZSINGER,

      Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of
Social Security,

      Defendant.

_____

## ORDER AND MEMORANDUM OF DECISION
_____

This is a social security benefits appeal under 42 U.S.C. § 405(g). Plaintiff Samantha L.

Litzsinger challenges the final decision of the Commissioner of Social Security (the

"Commissioner"), denying her application for disability insurance benefits. Jurisdiction is

premised upon 42 U.S.C. § 405(g).

## FACTS

### 1. *Medical Evidence*

Plaintiff was born on July 20, 1983, and was nineteen years old at the onset of her alleged

disability. (Admin. R. at 49 [filed Dec. 1, 2006] [hereinafter "Admin. R."].) Plaintiff has a high

school education and has worked in the vocationally relevant past as a deli clerk, dressing room

clerk, cashier/service desk clerk, and bagger. (*Id*. at 63, 260–71.) Plaintiff alleges she became

unable to work beginning on June 14, 2002, due to hearing loss, ovarian and uterine cysts, and stomach problems. (*Id.* at 49.) Because Plaintiff's hearing loss is her only medical condition that remains at issue in the instant motion, I review her medical history only with respect to that ailment.

In February 1993, Richard L. Cundy, M.D., diagnosed Plaintiff with a "progressive neurosensory hearing loss in the high frequencies" and recommended hearing aids. (*Id.* at 151.) From November 2002 through August 2005, Paul D. Kroeze, Board-Certified Hearing Instrument Specialist, saw Plaintiff for her hearing loss. (*See id.* at 254–57.) In March 2003, Mr. Kroeze fit Plaintiff for hearing aids. (*See id.* at 160.) Mr. Kroeze found that, once adjusted, the hearing aids allowed Plaintiff to hear "quite well," including whispers, voices muffled by hands, and voices of speakers with their backs turned. (*Id.*) On August 25, 2005, Mr. Kroeze noted that Plaintiff had experienced "a marked decrease in hearing in two years," and that "[t]his hearing decrease [was] more than would [have] normally be[en] expected." (*Id.* at 255.)

In an undated letter, Mr. Kroeze stated that "[Plaintiff] ha[d] a severe to profound, steeply sloping, high frequency hearing loss" that presented great difficulty for her in hearing and understanding normal conversation. (*Id.* at 254.) According to Mr. Kroeze, even with hearing aids, it was not possible for Plaintiff to fully correct her hearing loss. (*Id.*) Mr. Kroeze emphasized that, to increase Plaintiff's understanding of verbal communication, she needed to be in close proximity to the speaker, so as to remove background noise and allow Plaintiff to receive visual cues from the speaker. (*Id.*) According to Mr. Kroeze, that Plaintiff had great difficulty hearing unless the speaker was speaking directly to her "ma[de] it difficult for her to work with

others in jobs where verbal communication is necessary." (*Id.*) Finally, Mr. Kroeze concluded that "[Plaintiff's] hearing [had] deteriorated more rapidly than most people" and that her hearing would "not get better and [would] very likely continue to deteriorate." (*Id.*)

In April 2003 and September 2004, state agency disability examiners assessed Plaintiff's residual functional capacity ("RFC"). (*See id.* 163–70, 246–53.) In both evaluations, the examiners noted that Plaintiff was wearing hearing aids and could hear "quite well." (*Id.* at 165, 247.) According to the examiners, Plaintiff could hear whispers, a voice muffled by hands, and the voice of a speaker with his back turned away from Plaintiff. (*Id.* at 165, 248.) The examiners concluded that Plaintiff's ability to hear was limited to the extent that she should "avoid background noise." (*Id.* at 167, 250.)

## 2. *Procedural History*

On April 13, 2004, Plaintiff filed an application for disability insurance benefits. (*Id.* at 49–52.) On September 1, 2004, the Social Security Administration denied Plaintiff's application. (*Id.* at 26–29.) On October 12, 2004, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 30.) On September 12, 2005, the ALJ held a hearing at which Plaintiff and a vocational expert ("VE") testified. (*Id.* at 258–80.)

Plaintiff testified as follows. She had last worked in 2003 for a month as a bagger, but quit her job due to the way her employer was treating her because of her hearing loss. (*Id.* at 262.) Prior to bagging, Plaintiff had worked as a deli clerk for about six months in 2002. (*Id.*) She seldom dealt with customers as a deli clerk, and her employer accommodated her hearing loss by taking her outside of the deli to give her any instructions in an environment with minimal

background noise. (*Id.* at 246–65.) Plaintiff quit her position as a deli clerk because her parents were moving and she was living with them. (*Id.* at 264.)

Plaintiff further testified that her hearing was getting "progressively worse." (*Id.* at 266.) She had great difficulty hearing when talking with more than one other person and was not able to watch television without captions due to background noise. (*Id.* at 266–68.) She could generally understand the ALJ when he was looking directly at her while speaking. (*Id.*) She had been told that surgery could not improve her hearing and that she should expect to be totally deaf by age thirty or forty. (*Id.* at 268.)

Plaintiff went on to state that she was having increased difficulty understanding her daughter and had needed to have her hearing aids adjusted twice in the past year. (*Id.* at 268–69.) Plaintiff did not drive because she was unable to hear emergency vehicles until they were directly behind her vehicle. (*Id.* at 261–62, 277–78.) Prior to having her hearing aids, Plaintiff could hear some fire alarms — depending upon their pitch — but was not able to hear school fire alarms. (*Id.*) Since acquiring her hearing aids, she had not tested whether she could hear such alarms. (*Id.*)

The VE testified at the hearing regarding his review of the vocational exhibits in Plaintiff's file. (*Id.* at 270–79.) The VE submitted a report regarding Plaintiff's past work, stating as follows: (1) deli clerk was light with a specific vocational preparation ("SVP")[1] level of two; (2)

---

[1]SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001) (citation and internal quotation marks omitted).

dressing room clerk was light with an SVP level of three; (3) cashier/service desk clerk at a

department store was light with an SVP level of three; and (4) bagger was medium with an SVP

level of two. (*Id.* at 149, 272.)

Additionally, the VE opined on a hypothetical question posed by the ALJ. (*Id.* at

272–79.) The VE was to assume an individual of Plaintiff's age, education, and skill level, who

had no physical restrictions. (*See id.* at 272–73.) Assuming such a person, the ALJ asked if there

was a job: (1) requiring "minimal . . . communication;" (2) avoiding background and loud noise;

(3) requiring occasional hearing; and (4) requiring communication only through face-to-face

contact between speakers that are no further than ten feet apart. (*Id.*) The VE opined that none

of Plaintiff's past relevant work would satisfy the ALJ's requirements. (*Id.* at 273–74.) After

taking some time off the record to research the ALJ's hypothetical, the VE testified:

> The only job that I could find that my own experience and DOT [Dictionary of
> Occupational Titles] would meet [sic] those requirements is that of a semi-
> conductor bonder. DOT 726685066. That's a skill level [two], sedentary
> occupation. There are 37,000 nationally and 475 in Colorado. All the other jobs
> that I thought might work [sic] the DOT required more hearing. More than,
> occasional or more.

(*Id.* at 274–75.) Upon examination by Plaintiff's counsel, the VE testified that there were no jobs

that existed in significant numbers that would accommodate someone who could not hear a fire

alarm. (*Id.* at 276–77.) Additionally, the VE admitted to Plaintiff's counsel that if the

hypothetical individual required face-to-face contact with a speaker no more than ten feet away

and, thus, was unable to hear directions given over an intercom, the number of available

semiconductor bonder jobs in the local and national economy would be halved. (*Id.* at 278–79.)

On November 16, 2005, the ALJ issued a decision reflecting his finding that Plaintiff was not disabled within the meaning of the Social Security Act, because Plaintiff had the RFC to work as a semiconductor bonder. (*Id.* at 19.) In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) The ALJ next determined that Plaintiff's hearing loss was a medically determinable, severe impairment. (*Id.*) Despite its severity, the ALJ determined that the impairment was not sufficiently severe to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations Number 4. (*Id.*) Additionally, the ALJ found Plaintiff's testimony "generally credible, but only to the extent [it was] consistent with the [ALJ's] RFC finding." (*Id.* at 18.)

Based on the evidence presented, the ALJ concluded that Plaintiff had the following RFC: "avoid background and loud noise; occasional hearing where person speaking is looking directly at [Plaintiff]; and communicate where speaker is close (within 10 feet) to [Plaintiff]."[2] (*Id.*) In accord with this RFC, the ALJ determined that Plaintiff could make a vocational adjustment to work as a semiconductor bonder, of which 475 such jobs existed in Colorado and 37,000 existed nationally. (*Id.* at 19.) Based on the foregoing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

On July 12, 2006, the Appeals Council affirmed the ALJ's decision, making it the final administrative decision for the purposes of judicial review. (*Id.* at 4–6.) On September 11, 2006, Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability benefits.

---

[2]According to the VE, "occasional," means hearing up to one-third of the workday. (*See id.* at 273.)

(Compl. [filed Sept. 11, 2006].)  On March 2, 2007, Plaintiff filed her opening brief.  (Pl.'s

Opening Br. [Mar. 2, 2007] [hereinafter "Pl.'s Br."].)  On April 2, 2007, the Commissioner filed a

response brief.  (Def.'s Resp. Br. [filed Apr. 2, 2007] [hereinafter "Def.'s Resp."].)

## ANALYSIS

### 1.    *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part, that:

> [t]he findings of the Commissioner of Social Security as to any fact,
> if supported by substantial evidence, shall be conclusive, and where
> a claim has been denied by the Commissioner of Social Security or
> a decision is rendered under subsection (b) of this section which is
> adverse to an individual who was a party to the hearing before the
> Commissioner of Social Security, because of failure of the claimant
> or such individual to submit proof in conformity with any regulation
> prescribed under subsection (a) of this section, the court shall
> review only the question of conformity with such regulations and
> the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record

as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*;

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The

court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See*

*Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot reweigh the evidence

nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316

(10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

### 2.    *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In proving disability, a claimant must make a *prima facie* showing that she is unable to return to the prior work she has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs the claimant could perform. *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520 (2008); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See* 20 C.F.R. § 404.1520(a) (2008); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). First, the claimant must demonstrate that she is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (2008). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits her physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents her from performing work she has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, she is not disabled. 20 C.F.R. § 404.1520(f) (2008); Williams, 844 F.2d at 751. The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience; and (2) there is availability of that type of work in the national economy. See 20 C.F.R. § 404.1520(g) (2008); Williams, 844 F.2d at 751.

### 3.     *Disability Determination*

Plaintiff sets forth two arguments in support of her contention that the ALJ's decision was erroneous.  Plaintiff argues the ALJ erred in: (1) assessing Plaintiff's RFC; and (2) concluding that jobs available to Plaintiff exist in significant numbers.  (*See* Pl's Br.)  I address both arguments below.

### a.     *Plaintiff's RFC*

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff was capable of working in a job requiring "occasional hearing," with face-to-face contact at a distance of ten feet apart.  (*See id.* at 15.)  I disagree.  In assessing a claimant's RFC, the ALJ must consider any medical opinions regarding the claimant's limitations, "as well as the claimant's own testimony concerning her limitations."  *Wyatt v. Barnhart*, 190 F. App'x 730, 734 (10th Cir. 2006); 20 C.F.R. 404.1545(a)(3) (2008).  In the instant case, the ALJ credited Mr. Kroeze's opinion regarding Plaintiff's limitations, including Mr. Kroeze's findings that Plaintiff: (1) had difficultly understanding rapid or slurred speech and speech made in the presence of background noise; and (2) would find it difficult to work with others in jobs where verbal communication was necessary.  (*See* Admin. R. at 17–18 [citing *id.* at 254].)

Plaintiff argues that Mr. Kroeze's opinion does not support an RFC that Plaintiff could perform work requiring "occasional hearing."  (Pl.'s Br. at 15–21.)  Plaintiff misses the mark.  Considering that the ALJ's RFC included the *additional* limitations that background noise and loud noise be avoided, as well as required that communication occur only through face-to-face

contact where the speakers are less than ten feet apart, the RFC finds direct and substantial support in Mr. Kroeze's opinion.

Even if I were to find a conflict between the RFC and Mr. Kroeze's opinion, I would deem any error in the ALJ's interpretation of the limitations imposed by Mr. Kroeze harmless. *See Glass v. Shalala*, 43 F.3d 1397 (10th Cir. 1994) (holding harmless error where evidence issue would not have unfairly affected the ultimate result). The transcript of Plaintiff's disbility hearing itself shows clearly that she is able to communicate quite well in a one-on-one, face-to-face conversation with limited background noise. (*See* Admin. R. at 258–79.) The twenty-page transcript is virtually bereft of instances in which Plaintiff failed to understand the ALJ's questions or even had to ask the ALJ to repeat his question. (*See id.*) It is axiomatic that neither the ALJ nor this court need check common sense at the door when making a determination regarding a plaintiff's limitations. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (noting "the validity of a hearing officer's observations of the claimant"). Thus, because the ALJ's RFC assessment was substantially supported by Plaintiff's hearing testimony, I find any error by the ALJ in assessing Dr. Kroeze's opinion harmless.

However, this court finds, *sua sponte*, that the ALJ *did* err in assessing Plaintiff's RFC by failing to consider her potential inability to hear fire alarms. In a nonadversarial disability hearing, the ALJ has a duty "to ensure that an adequate record is developed . . . consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). When the information the ALJ needs to clarify the claimant's limitations is not "readily available" from the record, the ALJ should recontact the claimant's medical sources for information or ask the claimant to attend one

or more consultative examinations at the Social Security Administration's expense.  *See* 20 C.F.R. § 404.1512(f) (2008).

In the instant case, at the disability hearing, Plaintiff's counsel posed a question to the VE regarding the effect of Plaintiff's potential inability to hear fire alarms.  (*See* Admin. R. at 276–77.)  The VE testified that no jobs existed in significant numbers in the national economy that would accommodate an individual incapable of hearing an emergency signal, such as a fire alarm.  (*Id.* at 277.)  The ALJ then questioned Plaintiff regarding her ability to hear fire alarms.  (*Id.*)  Plaintiff stated that her ability depended upon the pitch of the alarm, and that — prior to receiving her hearing aids — she had been unable to hear a "general fire alarm like the school fire alarms."  (*Id.*)  Plaintiff explained that since getting her hearing aids, she had not tested her ability to hear such alarms, but that she still had sufficient difficulties hearing emergency vehicles to prevent her from driving.  (*Id.*)  Given that, according the VE — whose testimony the ALJ credits — Plaintiff's potential inability to hear fire alarms would have rendered her incapable of performing substantial gainful activity, I find the ALJ had a duty to develop the record as it related to Plaintiff's ability to hear such alarms.  The ALJ could have attempted to gather such information by recontacting Plaintiff's medical sources or ordering an outside consultative examination.  *See* 20 C.F.R. 404.1512(f) (2008).  Based on the foregoing, I find the ALJ erred in assessing Plaintiff's RFC prior to making every reasonable effort to develop the record with respect to her ability to hear fire alarms, and I remand on that basis.

### b.	Significant Number of Jobs in Local and National Economy

Finally, Plaintiff argues substantial evidence did not support the ALJ's finding that jobs within Plaintiff's capacity existed in significant numbers in the local or national economy. (Pl.'s Br. at 13–17.) According to Plaintiff, with respect to the only job available to Plaintiff — that of a semiconductor bonder — only 238 jobs exist in Colorado, an insignificant number as a matter of law. (*Id.*) The Commissioner counters that even if the court finds only 238 such jobs exist in Colorado, the number of jobs available in the national economy would remain significant. (Def.'s Resp. at 13.) I am persuaded by Plaintiff's argument.

At step five, an ALJ must find a claimant disabled unless the claimant could not, considering her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A) (2006). Federal statute defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* The Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). This inquiry requires a fact-specific analysis that should ultimately reflect the ALJ's common sense weighing of the statutory language as applied to the particular claimant's factual situation. *Id.*; *accord Rhodes v. Barnhart*, 117 F. App'x 622, 631 (10th Cir. 2004). Factors the ALJ should consider when determining whether work exists in significant numbers might include: "the level of

the claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work . . . ." *Triminar*, 966 F.2d at 1330; *accord Rhodes*, 117 F. App'x at 631.

According to the VE's initial testimony, there were 37,000 semiconductor bonder jobs in the national economy and 475 in Colorado. (*Id.* at 275.) However, the VE clarified that, in his experience, only about half of these jobs comported with the ALJ's RFC assessment requiring face-to-face communication, because half of the semiconductor bonder jobs involved relaying instructions over an intercom. (*Id.* at 278–79.) Acknowledging this testimony, the Commissioner argues that because "the evidence shows that Plaintiff had no problem understanding written instructions, . . . any inability to follow verbal instructions . . . would not erode the number of jobs supported by the DOT [for semiconductor bonder positions]." (Def.'s Resp. at 16.) The Commissioner points to no evidence supporting his contention that a semiconductor bonder position would allow the employee to receive her instructions in written form. (*See id.*) It is worth noting that the VE testified that a semiconductor bonder "would have to . . . be able to understand the instructions and fine tuning [for the job], so if they had no hearing then they probably could not receive the training and could not do that job." (Admin. R. at 275.) *Perhaps* a semiconductor bonder *could* receive this essential training through written instructions, and *perhaps* an employer would be willing to make such an accommodation for Plaintiff. However, there is insufficient evidence on record to support a finding that the ability to read and understand

written instructions is sufficient to meet the communication demands of the job at issue absent accommodation by the employer.

Considering that the ALJ credited the VE's testimony, I hold the ALJ's finding that there were "475 [semiconductor bonder] jobs in the local economy and 37,000 in the national economy" was clear error. (*See* Admin. R. at 20.) Instead, the record supports a finding that approximately 238 jobs in the local economy and 18,500 in the national economy comported with the ALJ's RFC assessment. (*See id.* at 279.) Because the ALJ did not consider whether such numbers are numerically significant, this court is not in a position to meaningfully review the ALJ's decision at step five and, therefore, must remand for further consideration by the ALJ.

In an effort to provide some guidance to the ALJ upon remand, the court notes that its research suggests that whether there are a "significant" number of semiconductor jobs in the local and national economy is, at the very least, a close call. *See, e.g.*, *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) (refusing to find harmless error where the ALJ was misinformed by the VE regarding the supposedly large number of jobs available in region, when — in fact — there were only 199 jobs available in the region). Considering the lack of clarity as to whether semiconductor bonder jobs exist in sufficiently significant numbers, the ALJ is strongly encouraged to undertake the multi-factored analysis laid out in *Trimiar* and discussed above. *See Rhodes*, 117 F. App'x at 632 (finding that "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the [whether 150 jobs in the state and 14,000 jobs nationally met the] numerical-significance requirement, we cannot properly review the issue").

### *4.    Conclusion*

Based on the foregoing, it is therefore ORDERED that the Commissioner's decision is

REVERSED and REMANDED for proceedings consistent with this opinion.

Dated this 13th day of February, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge